UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

EAST COAST SHEET METAL
FABRICATING CORP., D/B/A
EASTCOAST CAD/CAM,

        Plaintiff,

  v.

AUTODESK, INC.,

        Defendant.

Civil No. 1:12-cv-00517JL

**AUTODESK, INC.'S OPENING *MARKMAN* BRIEF REGARDING CLAIM CONSTRUCTION FOR U.S. PATENT NOS. 7,499,839, 7,917,340, AND 8,335,667**

Richard C. Nelson, Esq. (NH Bar #1687)
Damian R. LaPlaca, Esq. (*pro hac vice*)
Robert F. Callahan, Jr., Esq. (NH #21167)
Nelson Kinder + Mosseau PC
99 Middle Street
Manchester, NH 03101
Telephone: (603) 647-1800

Donald J. Perreault, Esq. (NH Bar #12138)
Grossman, Tucker, Perreault & Pfleger, PLLC
55 S. Commercial Street
Manchester, NH 03101
Telephone: (603) 668-6560

Joel M. Freed, Esq. (*pro hac vice*)
Alexander P. Ott (*pro hac vice*)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000

*Attorneys for Defendant Autodesk, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I. Introduction ............................................................................................................ 1

II. Legal Standards ..................................................................................................... 2

III. The Disputed Constructions .................................................................................. 4

    A. Background ............................................................................................... 4

    B. Nature of the Claim Construction Disputes ............................................. 6

    C. "components of the [imported] geometrical information" ....................... 7

    D. "as a function of" ....................................................................................... 9

    E. "fabrication information" ........................................................................ 12

IV. Conclusion ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336 (Fed. Cir. 2010) ........................ 4

*Centocor Ortho Biotech v. Abbott Laboratories*, 636 F.3d 1341 (Fed. Cir. 2011) ......................... 4

*Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ........................................... 2

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) ........................... 1, 14

*Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378 (Fed. Cir. 2009) ............. 2, 14

*Exxon Research and Engineering v. United States*, 265 F.3d 1371 (Fed. Cir. 2001) ..................... 7

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ....................... 3, 14

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir 2004) ..... 2

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), aff'd,
    517 U.S. 370 (1996) ................................................................................................................ 2, 3

*North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571 (Fed. Cir. 1993) ........ 4, 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................. 2, 3, 4, 12

*Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008) .......................................................... 1

*Sunovion Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, 731 F.3d 1271
    (Fed. Cir. 2013) ........................................................................................................................... 3

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27
    (Fed. Cir. 2006) ........................................................................................................................... 2

**Statutes**

35 U.S.C. §112 ............................................................................................................................ 1, 4

I.   **Introduction**

Plaintiff East Coast Sheet Metal Fabricating Corp. ("East Coast") contends that Defendant Autodesk, Inc. ("Autodesk") has infringed all seventeen claims of U.S. Patent Nos. 7,499,839 (the '839 patent), 7,917,340 (the '340 patent), and 8,335,667 (the '667 patent) (collectively, the Asserted Patents). Autodesk and East Coast dispute construction of these three terms: "components of the [imported] geometrical information"; (2) "as a function of"; and (3) "fabrication information."

Autodesk submits this brief and the attached Declaration of Dr. Elliot Stern ("Stern Decl.," Exhibit A) in support of its proposed constructions of those disputed claim terms. Because those terms are common to all seventeen claims of the Asserted patents[1], their construction may well end up being dispositive of the case.

For example, if the term "components of the [imported] geometrical information" is indefinite as Autodesk contends it is, the patents are all invalid.[2] And a construction of "as a function of" to mean, as Autodesk contends, "using executable instructions influenced by" may well rule out proof of infringement.[3] Similarly, construction of "fabrication information" to

---

[1] Those terms are recited in every independent claim of the Asserted Patents. The remaining claims depend from those independent claims and incorporate by reference all their limitations. 35 U.S.C. § 112.

[2] In the first instance, "[i]ndefiniteness is a matter of claim construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). However, 35 U.S.C. § 282 also provides for a defense of invalidity based on "failure to comply with . . . any requirement of section 112." To be valid under that section, a patent claim must "particularly point [] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. The purpose of this requirement for definiteness is "to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).

[3] East Coast's proposal that "as a function of" simply means "using" appears designed to permit proof of infringement by pointing to any general use of information by the accused products without proving the presence of a mapping function that takes into account all three categories of the information called out in the claim. *See* section III.D, *infra*. "While a trial court should

1

mean "any information for construction" as contended by Autodesk may well lead to a conclusion that the claims of the Asserted Patents fail to validly distinguish from the prior art.[4]

## II. Legal Standards

"The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed." *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009). That is an issue of law to be decided by well-established rules of construction. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71, 983–84 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

Each and every word in a patent claim has meaning. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir 2004). The context of the words within the claim can also inform their meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). And the words chosen for a claim must be strictly followed—"courts may not redraft" them in order "to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Rather, the construction begins with the words of the claim, which are generally given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

Although claim construction begins with the words of the claims, the claims are read in the context of the entire patent, including the specification. *Phillips*, 415 F.3d at 1313–14. That is because a patent is a "'fully integrated written instrument' . . . consisting principally of a

---

certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326–27 (Fed. Cir. 2006).

[4] *See* section III.E, *infra*. Here again, the claim construction phase of patent litigation is not the place to resolve prior art invalidity, but it is appropriate for the court to be aware of the impact of the competing construction on that issue. *Cf. Wilson Sporting Goods Co.,* 442 F.3d at 1326–27.

specification that concludes with the claims." *Id.* at 1315. Accordingly, "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent," including the specification. *Id.* at 1321. Indeed, often "the best source for understanding a technical term is the specification from which it arose." *Id.* As a result, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316.

Together, the claims, the specification, and the record made before the Patent Office in procuring the patent constitute the intrinsic evidence bearing on claim construction. So "[w]hen construing claim terms, we first look to, and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Sunovion Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013).

Extrinsic evidence that does not contradict the intrinsic record also has relevance to claim construction. *Phillips*, 415 F.3d at 1318. Such "[e]xtrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 1317–18; *see also Markman*, 52 F.3d at 980.

When a claim construction question is one of definiteness (see Note 2, *supra*), the claims are *in*definite "where a person of ordinary skill in the art could not determine the bounds of the claims, *i.e.*, the claims were insolubly ambiguous." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Also, "a claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable." *Id.*

In addition to demanding claim terminology that does not suffer from indefiniteness, 35 U.S.C. § 112 demands that claim terminology as properly construed be supported by a proper "written description of the invention." 35 U.S.C. § 112, ¶ 1. To satisfy that written description requirement, the applicant must in the specification "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Centocor Ortho Biotech v. Abbott Laboratories*, 636 F.3d 1341, 1348 (Fed. Cir. 2011).[5] Where a proposed construction yields "an invention . . . [which] does not meet the description requirement," it is to be rejected. *North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993).

### III. The Disputed Constructions

#### A. Background

The three Asserted Patents share a common specification and are each entitled "Method and Apparatus for Importing Data into Program Code." The patent claims are generally directed to computer programs for designing real-world systems—such as ventilation systems or piping systems for buildings—by obtaining information in the form of design drawings, assigning values to components in the design layout, and carrying out calculations on that information to obtain information in the form of a final design. Stern Decl. at ¶ 15.[6]

---

[5] This test is not satisfied based on what might be obvious to the skilled artisan; it must be satisfied by what the skilled artisan finds within the four corners of the patent disclosure itself. *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) ("it is the specification itself that must demonstrate possession . . . a description that merely renders the invention obvious does not satisfy the requirement").

[6] "[E]xpert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field". *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005).

Three claim terms have been proposed for construction in the Joint Claim Construction and Prehearing Statement filed on October 10, 2013. This table sets forth the parties' proposed constructions for those three disputed terms:

| **Claim Term/Phrase** | **Autodesk's Proposed Construction** | **East Coast's Proposed Construction** |
|---|---|---|
| "components of the [imported] geometrical information" | Indefinite | No construction necessary. Alternatively, "pieces" or "elements" of the geometrical information |
| "as a function of" | "using executable instructions influenced by" | "using" |
| "fabrication information" | "any information for construction" | "information that is useful or necessary to fabricate a component or a system" |

Claim 1 of the '839 patent calls for a "computer-readable medium having computer executable instructions . . . that when executed by a processor performs the following steps," *i.e.*, a computer program. *Id.* at ¶ 16. The following ***bold italicized*** utilization of the disputed terms is typical of how all the asserted claims use them:

> 1. A computer-readable medium having computer executable instructions for designing a ventilation system that when executed by a processor performs the following steps comprising:
>
> obtaining a visual representation of one or more components of the ventilation system;
>
> assigning one or more property values to each of the components of said ventilation system using a first program code;
>
> exporting geometrical information representing said visual representation and said property values of each component to a data file using the first program code;
>
> importing said data file into a second software application; and
>
> using the second software application for:

> mapping all *components of the imported geometrical information* to a plurality of standard fittings *as a function of*: (1) standards information including (1A) information specific to each of the plurality of standard fittings and (1B) *fabrication information* of each of the plurality of specific standard fittings: (2) the imported geometrical information; and (3) the assigned property values; and
>
> generating a manufacturing blueprint comprising: the standard fittings; the *fabrication information*; and a three-dimensional representation of the visual representation,
>
> whereby each of the one or more components of the visual representation have been mapped to standard fittings and include *fabrication information* in the manufacturing blueprint, thus, eliminating a need to redraw every component of an architectural drawing before coordination, fabrication, and installation of the system.

The computer program of claim 1 involves obtaining a "visual representation" for a ventilation system. The specification of the Asserted Patents identifies .dwg design files previously employed in Autodesk's AutoCAD program as an exemplar of a visual representation. *Id.* The computer program of the Asserted Patents assigns property values to components in the design file and then exports the information and property values from that program to a second program, which carries out a mapping to standard fittings (off-the-shelf parts) that can be used in the construction of the ventilation system. *Id.* The program then saves a final design that includes the standard fittings to be used in the ventilation system, information for constructing the system, and a three-dimensional representation of the system. *Id.* This data can then be used to construct the ventilation system. *Id.*

    **B.**    **Nature of the Claim Construction Disputes**

The first claim construction dispute here centers on whether the phrase "*components of the [imported] geometrical information*" is fatally indefinite rather than properly amenable to construction. As discussed below, neither the claims nor the specification provide any explanation whatsoever as to what the phrase *components of the geometrical information* is

6

supposed to mean, and East Coast's proposed construction of what it means completely lacks any written description support.

The second claim construction dispute here focuses on whether the term "*as a function of*"—in the context of the "mapping" step where it appears in the claims (*see* claim 1 of the '839 patent quoted above)—calls for computer executable instructions influenced by each of the three categories of information listed in that mapping step. East Coast's proposal that "*as a function of*" simply means "using" amounts to a facile attempt to evade having to establish computer executable instructions influenced by each of the three categories of information in going about proof of infringement; but the explicit claim language and the supporting description of the patent specification show that evasion to be improper.

The third claim construction dispute here is over the scope of the term "*fabrication information*."  Neither the claims nor the specification justify rendering this term narrower than its plain meaning—"*any* information for construction" regardless of whether or not such information turns out to be indispensable or even helpful in fabrication.  Perhaps to interject some basis for flexibility for rebuttal arguments on the issue of invalidity over prior art, East Coast's proposed construction ("information that is useful or necessary to fabricate a component or a system") introduces a subjective determination of when information accessible in connection with construction meets some unspecified test that qualifies it as "useful or necessary."

C.    **"components of the [imported] geometrical information"**

Claim terminology that is "insolubly ambiguous" renders the claim fatally indefinite. *Exxon Research and Engineering v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  That principle applies here to the claim language "components of the imported geometrical

7

information" (as used in claims 1, 3, 4, and 5 of the '839 patent and claim 1 of the '340 patent) and "components of the geometrical information" (as used in claim 1 of the '667 patent[7]).

East Coast's proposal that "no construction is necessary" is belied by the fact that the claims themselves do not provide any clarification as to what *components of the [imported] geometrical information* are supposed to be. *See* Stern Decl. at ¶ 30. And that phrase is nowhere used in the patent specification. So there is simply no principled way to apply standard claim construction practices to the phrase *components of the [imported] geometrical information*. As already stated, because a patent is a fully integrated written instrument, the claims are supposed to be construed in the context of the specification which is supposed to be a source for finding the meaning that naturally aligns with description in the specification. *Phillips*, 415 F.3d at 1313–16. Here, that is essentially impossible.

Furthermore, East Coast's alternative assertion that *components of the [imported] geometrical information* means "pieces" or "elements" of the geometrical information is not at all supported, and it makes no sense in the context of the claims. As purported intrinsic evidence support[8], East Coast in the Joint Claim Construction and Prehearing Statement filed on October 10, 2013, points to the patents' disclosure of geometrical information <u>for components of the design</u>.[9] But the term to be construed is *components of the [imported] geometrical information*,

---

[7] This phrase in the claims of the '667 patent lacks the word "imported" before "geometrical information" because in the '667 patent claims have no "importing" step.

[8] East Coast has offered no extrinsic evidence in support of its construction.

[9] The disclosure pointed to by East Coast is a passage in the specification which describes geometrical information as comprising data values such as "centerline coordinates, inlet coordinates, outlet coordinates, and orientation of the fitting." '667 Patent at Col. 6:3-6. But these clearly are not the "components of the geometrical information" recited in the claims—which call for mapping such components to standard fittings—inasmuch as there is no support in the disclosure for mapping "centerline coordinates, inlet coordinates, outlet coordinates, and orientation of the fitting" to standard fittings. As already mentioned, where a proposed

not components of the design. The patents' disclosure pointed to by East Coast simply does not refer to *components of the [imported] geometrical information*.

That phrase—*components of the [imported] geometrical information*—exists only once in each claim and lacks an antecedent to earlier claim language reflecting its meaning. The term "components" is elsewhere used in the claim, e.g., in the "obtaining" and "assigning" steps, but there the reference is to "components of the/said ventilation system," not "components of the geometrical information."

The bottom line is that the claims shed no further light on what is meant by *components of the [imported] geometrical information* than the specification does. Because neither the claims nor the specification reveal what "components of the [imported] geometrical information" means, the phrase is indeed insolubly ambiguous and thus indefinite.

D.   "as a function of"

The phrase "as a function of" in the context of the claims does not merely mean "using" as contended by EastCoast; it means "using executable instructions influenced by" as contended by Autodesk. The preambles of the independent claims explicitly state that the claim steps employed to design the system are performed when a processor executes computer executable instructions. *See, e.g.,* the preamble recited in the above-quoted claim 1 of the '839 patent ("A computer-readable medium having ***computer executable instructions*** for designing a ventilation system that ***when executed by a processor performs the following steps***"). Indeed, the plain meaning of the term "as a function of" in the context of the Asserted Patents derives from computer programming as a set of executable instructions such as a subroutine or module. Stern Decl. at ¶ 20.

---

construction "does not meet the description requirement" it is to be rejected. *See North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993).

Furthermore, the recited mapping step of the claims, as discussed in the specification, relies on information that "includes, for example, rules and tables" which influence implementation of the executable instructions:

> The standards information includes information that allows nonstandard fittings to be mapped to standard fittings. This <u>information includes, for example, rules and tables</u>, dependent on the property values, which are applied to the imported geometrical information. For example, in an HVAC system, information relating to standard duct lengths, connectors, gauges, locks, seams, stiffeners, reinforcement, and gaps are applied to the imported geometrical information.

'839 Patent at Col. 6:21–28 (emphasis added). As explained in Exhibit A, one of ordinary skill in the art reading that very passage would understand that the mapping step involves the use of executable instructions which initiate computations influenced by the "rules and tables" of the standards information. Stern Decl. at ¶ 21.

It is also apparent that the executable instructions must be designed so that the function is influenced by *each* of the categories of information separately called out in the "mapping" step. Since the mapping function is implemented by computer executable instructions, the instructions must be designed to check each of those categories of information in every instance, because there is no way of knowing in advance which category of information may be dispositive of what the design should be in any specific case. Stern Decl. at ¶¶ 21–22. That the "mapping" function is implemented in computer executable instructions influenced by the three categories of information listed in the claim is also made evident by Figure 4 which the Asserted Patents identify as "an algorithm to implement the present invention." '839 Patent at Col. 2:38.

10



**Figure 4 of the '839 Patent.**

Figure 4 includes as step 414: "Utilize standards information, geometrical information, and property values to generate a final design" in the flow chart for algorithm 400. '839 Patent at Fig. 4. The "standards information, geometrical information, and property values" of step 414 are the very same categories of information recited in the "mapping" step of the asserted claims. *See, e.g.,* '839 Patent at Claim 1. According to Figure 4, each of those categories influences the "algorithm to implement the present invention."[10]

---

[10] It is noteworthy that while Figure 4 calls out the same categories of information recited in the mapping step (standards information, geometrical information, and property values), Figure 4—like the rest of the disclosure—provides no guidance whatsoever on the meaning of "components of the [imported] geometrical information" which the claims require to be mapped as a function of those categories.

11

East Coast's proposed construction thus does not go far enough in proposing "using" as the meaning of as "as function of." While "using" might suffice as a definition of "as a function of" in the abstract, claim construction does not deal with the abstract. As discussed earlier, claims are to be read in the context of the specification and are to be construed it in a way that aligns with the patent's description of the invention. *Phillips*, 415 F.3d at 1313–16. Autodesk's construction ("using executable instructions influenced by") does precisely that. East Coast's abstract construction ("using") does not.

As previously suggested, East Coast's abstract construction may well be intended to lay the foundation for an attempt to prove infringement without having to prove use of executable instructions influenced by all the information categories recited in the mapping step. Be that as it may, East Coast construction should be rejected for failure to address the context in which "as a function of" is used in the claim and supported in the specification.

E. **"fabrication information"**

The term "fabrication information" should not be restricted to "useful or necessary information" as urged by East Coast. Autodesk's construction ("any information for construction") is the plain meaning of this term. Neither the claims nor the specification justify rendering this term more narrowly than its plain meaning. And neither the claims nor the specification justify introducing into the claims a subjective determination of when information accessible in connection with construction of a system meets an unspecified test that qualifies it as "useful or necessary."

As previously suggested, East Coast may wish to do that so it can perhaps latch onto that subjective determination for rebuttal arguments to fend off invalidity over prior art. But there is no sound basis for adopting the ambiguous and unsupported construction sought by East Coast.

12

By its very language, the term "fabrication information" specifies that it is information for construction. There is no reason it should not embrace "*any* information for construction," whether or not such information turns out to be indispensable (necessary) nor even helpful (useful) in fabrication.

The patent specification certainly does not limit the scope of "fabrication information" based on any actual or perceived indispensability or usefulness. Indeed, the term "fabrication information" is only used twice in the entire patent specification, where it states: "The standards information may also include fabrication information of standard fittings. The fabrication information is typically a function of the fittings themselves and the property values of each of the standard fittings." '839 Patent at Col. 6:38–41. While not providing specific insight into the meaning of the term "fabrication information," the fact that fabrication information is described based on what it "typically" is suggests that it broadly encompasses any such information and certainly does not create a limitation to only certain information.

In any event, East Coast's proposed construction ("information that is useful or necessary to fabricate a component or a system") *adds* ambiguity, rather than provides definitional clarity. East Coast's construction does not set forth how one should determine what degree of applicability to the construction process a piece of information must have in order to qualify as "useful or necessary." *See* Stern Decl. at ¶ 29. Instead, East Coast's construction appears to be tailor-made to provide flexibility for East Coast's invalidity rebuttal arguments, *i.e.*, to allow East Coast an opening to arbitrarily exclude prior art by arguing that the fabrication information used in such prior art does not fall on the correct side of the "useful or necessary" spectrum. Such a tactic flies in the face of the very purpose of claim construction, which is "to determine the meaning and **scope of the patent claims** that the plaintiff alleges have been infringed."

13

*Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009) (emphasis added); *see also Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("we have held claims indefinite where a claim . . . contains a term that is 'completely dependent on a person's subjective opinion'") (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)).

Accordingly, East Coast's proposed construction should be rejected in favor of Autodesk's construction that aligns with the specification's suggestion that "fabrication information" is a broad term.

### IV. Conclusion

For all the foregoing reasons, Autodesk respectfully requests that the Court adopt its proposed constructions of the disputed terms.

Dated: November 21, 2013	Respectfully submitted,

*/s/ Robert F. Callahan, Jr.*
Richard C. Nelson, Esq. (NH Bar #1687)
Damian R. LaPlaca, Esq. (*pro hac vice*)
Robert F. Callahan, Jr., Esq. (NH #21167)
Nelson Kinder + Mosseau PC
99 Middle Street
Manchester, NH 03101
Telephone: (603) 647-1800

Donald J. Perreault, Esq. (NH Bar #12138)
Grossman, Tucker, Perreault & Pfleger, PLLC
55 S. Commercial Street
Manchester, NH 03101
Telephone: (603) 668-6560

Joel M. Freed, Esq. (*pro hac vice*)
Alexander P. Ott (*pro hac vice*)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000
*Attorneys for Defendant Autodesk, Inc.*

## CERTIFICATE OF SERVICE

I, Robert F. Callahan, Jr., Esq., hereby certify that on this 21st day of November 2013, I served all parties registered with ECF for this matter with a true copy of the foregoing **Autodesk, Inc.'s Opening *Markman* Brief Regarding Claim Construction for U.S. Patent Nos. 7,499,839, 7,917,340, and 8,335,667** by virtue of transmitting the same to the Court via the ECF system:

*/s/ Robert F. Callahan, Jr.*
Robert F. Callahan, Jr., Esq.