# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| EAST COAST SHEET METAL FABRICATING CORP., D/B/A EASTCOAST CAD/CAM, <br><br> Plaintiff, <br><br> v. <br><br> AUTODESK, INC., <br><br> Defendant. | Civil No. 1:12-cv-00517LM |

## AUTODESK, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS

Richard C. Nelson, Esq. (NH Bar #1687)
Damian R. LaPlaca, Esq. (*pro hac vice*)
Robert F. Callahan, Jr., Esq. (NH #21167)
Nelson Kinder & Mosseau PC
99 Middle Street
Manchester, NH 03101
Telephone: (603) 647-1800

Donald J. Perreault, Esq. (NH Bar #12138)
Grossman, Tucker, Perreault & Pfleger, PLLC
55 S. Commercial Street
Manchester, NH 03101
Telephone: (603) 668-6560

Joel M. Freed, Esq. (*pro hac vice*)
Alexander P. Ott (*pro hac vice*)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000

*Attorneys for Defendant Autodesk, Inc.*

I.     Introduction

"[T]he patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention." *Halliburton Energy Servs., Inc. v. M-I, LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). That requirement is "to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights." *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938).

Through the present motion, Defendant Autodesk, Inc. ("Autodesk") seeks summary judgment of invalidity for indefiniteness in connection with the **mapping** recited in every claim of the asserted patents[1]. When read in light of the specification, it fails to "clearly circumscribe what is foreclosed from future enterprise." *United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 236 (1938).

II.    Statement of Material Facts

1.     As originally filed, East Coast's patent application contained six claims, none of which mentioned mapping. U.S. Patent Application No. 11/238,626 (the '839 Application), September 29, 2005 Application (Freed Decl. Ex. A) at 16–18.

2.     All those original claims were rejected over prior art. '839 Application, December 4, 2006 Rejection (Freed Decl. Ex. B) at 2.

---

[1]     The actual claim language is: mapping all ***components of the imported geometrical information*** to a plurality of standard fittings ***as a function of*** (1) standards information including (1A) information specific to each of the plurality of standard fittings and (1B) ***fabrication information*** of each of the plurality of specific standard fittings, (2) the imported geometrical information, and (3) the assigned property values.
       Using the Court's claim construction for disputed terms (Doc. No. 67), the mapping called for by the claims is: mapping all ***pieces or elements of the imported geometrical information*** to a plurality of standard fittings ***using*** (1) standards information including (1A) information specific to each of the plurality of standard fittings and (1B) ***information that is useful or necessary to fabricate*** each of the plurality of specific standard fittings, (2) the imported geometrical information, and (3) the assigned property values.

3. In response to the rejection, the claims were amended to say that "the standards information includes information that when applied to the geometrical information, maps non-standard fittings to standard fittings." '839 Application, April 10, 2007 Amendment (Freed Decl. Ex. C) at 3–6.

4. The amended claims were also rejected over prior art. '839 Application, July 30, 2007 Rejection (Freed Decl. Ex. D) at 2.

5. East Coast argued against the rejection, but the Examiner found the arguments "non-persuasive." '839 Application, July 30, 2007 Rejection (Freed Decl. Ex. D) at 15.

6. East Coast then interviewed the Examiner and amended the claims again. '839 Application, June 4, 2008 Amendment (Freed Decl. Ex. E) at 3–9.

7. The newly amended claims eliminated the previous assertion that "the standards information includes information that when applied to the geometrical information, maps non-standard fittings to standard fittings." '839 Application, June 4, 2008 Amendment (Freed Decl. Ex. E) at 4, 6, 7, 9.

8. Rather, the newly amended claims called for "mapping all components of the imported geometrical information to a plurality of standard fittings as a function of: (1) standards information including (1A) information specific to each of the plurality of standard fittings and (1B) fabrication information of each of the plurality of specific standard fittings; (2) the imported geometrical information; and (3) the assigned property values." '839 Application, June 4, 2008 Amendment (Freed Decl. Ex. E) at 3, 5, 6–7, 8.

9. The examiner allowed claims with that amended mapping recitation. '839 Application, October 17, 2008 Notice of Allowance (Freed Decl. Ex. F) at 2.

10. Nowhere does the specification use the phrase "mapping all components of the imported geometrical information to a plurality of standard fittings" that was added by amendment to the claims. (*See* Doc. No. 67 at 10.)

11. With reference to step **412** of Figure 4, the specification does, however, say:

> In step **412**, standards information that is stored in step **410** is imported into a second software application . . . The stored standards information is used to assign standard fittings to the geometrical information. Additionally, the geometrical information and the property values are imported. '839 Patent (Freed Decl. Ex. G) at Col. 6:12–17.

12. The specification later further states that "The standards information includes information that allows non-standard fittings to be mapped to standard fittings." '839 Patent at Col. 6:21–22.

13. The statement about allowing non-standard fittings to be mapped to standard fittings is the sole mention of mapping activity in the as-filed patent application. *See generally* '839 Application, September 29, 2005 Application (Freed Decl. Ex. A).

14. The statement about allowing non-standard fittings to be mapped to standard fittings says nothing about mapping the standard fittings "as a function of" anything. *See* '839 Patent at Col. 6:21–22.

15. The specification discusses Figure 4 (shown below), which it calls "an algorithm to implement the present invention." '839 Patent at Col. 2:38.



'839 Patent, Figure 4.

16. Figure 4 contains a direction in step **414** to "Utilize standards information, geometrical information, and property values to generate a final design." '839 Patent, Figure 4.

17. Step **414** does not address mapping **geometrical information**, let alone all its components, to standards information.

18. Rather, step **414** generates a second three-dimensional representation "that looks substantially identical to the original three-dimensional representation" with "[t]he difference being that the second three-dimensional representation is a representation constructed of standard fittings" ('839 Patent at Col. 6:31–37), *i.e.*, non-standard fittings in the representation are replaced by standard fittings.

5

## III. Applicable Law

"The statutory requirement of particularity and distinctness in claims is met only when they . . . clearly circumscribe what is foreclosed from future enterprise." United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236 (1938). That requirement has come to be called the requirement for definiteness. "Indefiniteness is objectionable, because the patent does not disclose to the public how the discovery, if there is one, can be made useful, and how its infringement may be avoided." *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 65 (1923).

"A patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002). "The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." *United Carbon Co.*, 317 U.S. at 236.

The patent claims to be evaluated for definiteness "do not stand alone"; they "must be read in view of the specification, of which they are a part" and "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313, 1315 (Fed. Cir. 2005).

So "the definiteness of the language employed must be analyzed—not in a vacuum . . . ." *In re Moore*, 439 F.2d 1232, 1235 (CCPA 1971).[2] "It is important here to understand that under this analysis claims which on first reading—in a vacuum, if you will—appear indefinite may upon a reading of the specification disclosure or prior art teachings become quite definite. ***It***

---

[2] The CCPA is a predecessor to the Federal Circuit and its precedent is binding. *South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982).

*may be less obvious that this rule also applies in the reverse, making an otherwise definite claim take on an unreasonable degree of uncertainty*." *Id.* at n.2 (emphasis added).

That the patent owner "can articulate a definition supported by the specification . . . does not end the inquiry. Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Servs., Inc. v. M-I, LLC,* 514 F.3d 1244, 1251 (Fed. Cir. 2008).

The resulting issue of "indefiniteness presents a question of law" because it is "a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims," and the Federal Circuit has rejected the "argument that the issue of indefiniteness turns on an underlying factual dispute that should not have been resolved as a matter of law on summary judgment." *Exxon Research & Engineering Co. v. United States,* 265 F.3d 1371, 1376 (Fed. Cir. 2001).

**IV.   Argument**

All the asserted claims recite "mapping all components of geometrical information to a plurality of standard fittings" and doing so as a function of three recited criteria. The first recited criteria is "standards information," which includes (A) information specific to the standard fittings and (B) fabrication information of the standard fittings. The other two criteria are "geometrical information" and the "assigned property values."

The claimed mapping of components of the geometrical information to standard fittings as a function of those recited criteria must be read not only in the context of claims "but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005). We cannot look at that mapping "in a vacuum." *In re Moore,* 439 F.2d 1232, 1235 (CCPA 1971). And when the claimed mapping—mapping all components of

7

geometrical information to standard fittings as a function of the three recited criteria—is read in context of the specification and the file history, each asserted patent is invalid for indefiniteness "because the patent does not disclose to the public . . . how its infringement may be avoided." *Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 65 (1923).

Indeed, the specification nowhere mentions mapping components of the geometrical information to standard fittings as a function of the recited criteria. Rather, the sole mention of mapping activity is that "[t]he standards information includes information that allows <u>non-standard fittings</u> to be mapped to standard fittings." '839 Patent at Col. 6:21–22. Acknowledging that the specification does not call for "mapping all components of the imported geometrical information to a plurality of standard fittings" (Doc. No. 67 at 10), this Court pointed to the disclosure that "[t]he stored standards information is used to assign standard fittings to the geometrical information" ('839 Patent at Col. 6:14–16). But that disclosure plainly falls short of "clearly circumscrib[ing] what is foreclosed from the future enterprise" of mapping all components of the geometrical information to standard fittings as a function of the recited criteria. *See United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 236 (1938).

To the contrary, the opposite is true. This Court has found that "[t]he specification teaches that '[t]he geometrical information that exists for each component of the design may include centerline coordinates, inlet coordinates, outlet coordinates, and orientation of the fitting.'" (Doc. No. 67 at 7.) But the specification does not disclose mapping fitting orientation nor centerline, inlet, or outlet coordinates to standard fittings, let alone disclose doing that as a function of the three criteria recited in the claims. So it can hardly be said that the patent "disclose[s] to the public . . . how its infringement may be avoided." *Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 65 (1923).

"A patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 731 (2002). Here, when the claim requirement for mapping all components of geometrical information to standard fittings as a function of three recited criteria is read in light of the specification, neither of those things can be ascertained.

Indeed, Figure 4 does contain a direction in step **414** to "Utilize standards information, geometrical information, and property values to generate a final design," but step **414** is not a direction to or informative on what does or does not constitute mapping **geometrical information**, let alone all its components, to standards information. Rather, it is informative on mapping of "non-standard fittings to standard fittings" ('839 Patent at Col. 6:21) to generate a second three-dimensional representation "that looks substantially identical to the original three-dimensional representation" with "[t]he difference being that the second three-dimensional representation is a representation constructed of standard fittings" ('839 Patent at Col. 6:31–37).

Accordingly, because the patent lacks information on what does or does not constitute mapping all components of geometrical information to standards information as a function of three recited criteria, the claims are invalid for failure to "clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." *United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 236 (1938). That is so even though the disputed claim terms have now been "reduced to words" (*see Halliburton Energy Servs., Inc. v. M-I, LLC,* 514 F.3d 1244, 1251 (Fed. Cir. 2008)), because those words, when read in light of the specification "take on an unreasonable degree of uncertainty." *In re Moore,* 439 F.2d 1232, 1235 (CCPA 1971).

9

## V. Conclusion

Based on the foregoing, summary judgment of invalidity for indefiniteness is here required "[t]o guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights." *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938).

Dated: April 15, 2014                    Respectfully submitted,

/s/ Joel M. Freed
Richard C. Nelson, Esq. (NH Bar #1867)
Damian R. LaPlaca, Esq. (*pro hac vice*)
Robert F. Callahan, Jr., Esq. (NH #21167)
Nelson Kinder + Mosseau PC
99 Middle Street
Manchester, NH 03101
Telephone: (603) 647-1800

Donald J. Perreault, Esq. (NH Bar #12138)
Grossman, Tucker, Perreault & Pfleger, PLLC
55 S. Commercial Street
Manchester, NH 03101
Telephone: (603) 668-6560

Joel M. Freed, Esq. (*pro hac vice*)
Alexander P. Ott (*pro hac vice*)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000

*Attorneys for Defendant Autodesk, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2014, I served all parties registered with ECF for this matter with a true copy of the foregoing Brief in Support of Autodesk, Inc.'s Motion for Summary Judgment of Invalidity for Indefiniteness by virtue of transmitting the same to the Court via the ECF system:

/s/ Joel M. Freed