# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

EAST COAST SHEET METAL
FABRICATING CORP., D/B/A
EASTCOAST CAD/CAM,

        Plaintiff,

    v.

AUTODESK, INC.,

        Defendant.

Civil No. 1:12-cv-00517LM

## AUTODESK, INC.'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SANCTIONS PURSUANT TO RULE 11

Richard C. Nelson, Esq. (NH Bar #1867)
Damian R. LaPlaca, Esq. (*pro hac vice*)
Robert F. Callahan, Jr., Esq. (NH #21167)
Nelson Kinder & Mosseau PC
99 Middle Street
Manchester, NH 03101
Telephone: (603) 647-1800

Donald J. Perreault, Esq. (NH Bar #12138)
Grossman, Tucker, Perreault & Pfleger, PLLC
55 S. Commercial Street
Manchester, NH 03101
Telephone: (603) 668-6560

Joel M. Freed, Esq. (*pro hac vice*)
Alexander P. Ott (*pro hac vice*)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000

*Attorneys for Defendant Autodesk, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.     INTRODUCTION ............................................................................................1

II.    STATEMENT OF MATERIAL FACTS ..........................................................3

III.   LEGAL PRINCIPLES ......................................................................................7

       A.     Prosecution History Disclaimer ............................................................7

       B.     Accusing Prior Art Functionality of Infringement................................7

       C.     Rule 11 ...................................................................................................8

IV.    ARGUMENT ....................................................................................................8

       A.     East Coast Both Disregarded that What Infringes if Later Anticipates if
              Earlier and Relied on a Nonexistent Distinction from ABS 2004 ........8

       B.     East Coast has Unreasonably Attempted to Recapture Claim Scope
              Disclaimed During Patent Procurement................................................11

       C.     East Coast Should Be Sanctioned and Ordered to Pay Autodesk's Attorney
              Fees Under Fed. R. Civ. P. 11(c) .........................................................13

V.     CONCLUSION................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Atlas Powder Co. v. Ireco, Inc.*,
190 F.3d 1342 (Fed. Cir. 1999) ............................................................. 7

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998) ......................................................... 7, 13

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) ............................................................. 7

*Cartner v. Alamo Group, Inc.*,
Case Nos. 13-1293, 13-1314, 2014 WL 1394951 (Fed. Cir. Apr. 11, 2014) ........................... 8

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ............................................................................ 8

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997) ............................................................. 8

*Lemelson v. General Mills, Inc.*,
968 F.2d 1202 (Fed. Cir. 1992) ......................................................... 7, 13

*Lichtenstein v. Consol. Servs. Grp., Inc.*,
173 F.3d 17 (1st Cir. 1999) ............................................................. 8, 13

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ..................................................... 1, 7, 13

*Ormco Corp. v. Align Tech., Inc.*,
498 F.3d 1307 (Fed. Cir. 2007) ......................................................... 7, 13

*Peters v. Active Mfg. Co.*,
129 U.S. 530 (1889) ....................................................................... 1, 7

*Power Mosfet Techs., LLC v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004) ............................................................. 8

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004) ......................................................... 2, 13

*Schriber-Schroth Co. v. Cleveland Trust Co.*,
311 U.S. 211 (1940) .............................................................. 1, 2, 12, 13

*Upsher-Smith Labs., Inc. v. Pamlab, LLC*,
412 F.3d 1319 (Fed. Cir. 2005) ............................................................. 1

**Rules**

Fed. R. Civ. P. 11 ................................................................................. 8

## I.      INTRODUCTION

It is axiomatic that patent claims cannot be read for infringement in a way that they would also encompass the prior art.  *See Upsher-Smith Labs., Inc. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005).  As the Supreme Court long ago recognized: "That which infringes, if later, would anticipate, if earlier."  *Peters v. Active Mfg. Co.,* 129 U.S. 530, 537 (1889).

Another key patent law principle is that a patentee cannot recapture claim scope relinquished during the patent procurement proceedings.  *See Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1323 (Fed. Cir. 2003).  Patent claims "as allowed must be read and interpreted with reference to claims that have been cancelled or rejected."  *Schriber-Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 220–21 (1940).

East Coast's infringement allegations[1] are untenable and should never have been made. They knowingly flout both of the foregoing fundamental principles.

East Coast asserts infringement against accused products that convert non-standard fittings to standard fittings and thereby seeks a patent scope that effectively would cover the prior art Autodesk Building System (ABS) 2004 software.  Indeed, converting non-standard fittings to standard fittings was in fact present in prior art ABS 2004 software that East Coast was well aware of (and was even granted special access to) through East Coast's membership in the Autodesk Developer Network.

---

[1] East Coast's infringement claims were presented in its original Complaint (Doc. No. 1 at 11), its Amended Complaint (Doc. No. 15 at 6–7), and its Second Amended Complaint (Doc. No. 26 at 6–7).  Autodesk answered by asserting invalidity based on the prior art, including the prior art ABS 2004 software, and asserting unenforceability of the patents for inequitable conduct premised on East Coast's failure to disclose that prior art to the patent examiner during the *ex parte* patent procurement process.  (*See* Doc. No. 56 at 21–25; *see also* Doc. No. 56-2 (ABS 2004 invalidity claim chart).)  East Coast then filed an Answer denying invalidity with specific denials regarding ABS 2004.  (*See* Doc. No. 57 at 1, 2–3.)

Because a viable infringement case requires patent claims that are both infringed and valid, Autodesk asked East Coast in discovery how East Coast's patent claims could be valid at the scope asserted for them.  In response, East Coast advanced a **single** alleged distinction over prior art Autodesk software with which East Coast was intimately familiar through the Autodesk Developer Network.  The distinction advanced was that Autodesk's prior art supposedly fails to use or output "fabrication information."  The frivolity of that position, discussed more fully below, confirms that East Coast's infringement allegations have been in plain disregard of the Supreme Court's endorsement in *Peters* of the proposition that what infringes, if later, would anticipate, if earlier.

The unreasonableness of East Coast's infringement allegations is further confirmed by East Coast's indifference to the history of its patent procurement.  Under Federal Rule of Civil Procedure 11, East Coast was "at a minimum" required to "interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004).  In any reasonable undertaking, it could not have gone unnoticed that the claims were only allowed after East Coast amended them to **remove** the claim language *maps non-standard fittings to standard fittings* **in favor of** claim language calling for *mapping all components of the imported geometrical information to a plurality of standard fittings*.  As the Supreme Court has said, such allowed claims cannot "cover what was thus eliminated from the patent, *Schriber-Schroth,* 311 U.S. at 220–21, *i.e.*, mapping non-standard fittings to standard fittings**.**

In short, East Coast has not advanced any sound distinction between its patent claims as asserted and Autodesk's own prior art—prior art that East Coast never made of record during any of the patent procurement proceedings despite having intimate familiarity with its

capabilities.  Moreover, East Coast's infringement claim resurrects the very *non-standard fittings to standard fittings* language eliminated from the claimed subject matter during the patent procurement process—thereby effectively conceding that East Coast does not have, and never had, any legitimate basis for alleging Autodesk infringes its *actual* patent claims, rather than its failed application claims.

## II.    STATEMENT OF MATERIAL FACTS

1.      As filed on September 29, 2005, East Coast's first patent application [U.S. Patent Application No. 11/238,626 (the 2005 application)] contained six claims, none of which mentioned mapping.  Freed Decl., Ex. A, 2005 Application, at 16–18.

2.      The 2005 application issued as U.S. Patent No. 7,499,839 (the '839 patent) and is the parent application to two continuation applications that resulted in the two other patents asserted by East Coast: U.S. Patent Nos. 7,917,340 (the '340 patent) and 8,335,667 (the '667 patent).  Freed Decl., Exs. B, C, and D, cover pages.

3.      The original claims of the 2005 application were rejected.  Freed Decl. Ex. E, December 4, 2006 Rejection at 2.

4.      East Coast amended the rejected, original claims of the 2005 application to say:

> wherein the standards information includes information that, when applied to the geometrical information, **maps *non-standard fittings*** to standard fittings

Freed Decl., Ex. F, April 10, 2007, Amendment at 3 (emphasis added).

5.      East Coast argued that the Smith prior art reference—cited by the patent examiner to reject the then-pending claims—did not disclose such mapping.  *Id.* at 8.

6.      The patent examiner concluded that East Coast's arguments were "not persuasive" and maintained the rejection.  Freed Decl., Ex. G, July 30, 2007 Rejection at 15.

7.      The inventors then met with the examiner where they discussed the Smith prior art.  Freed Decl., Ex. H, Interview Summary at 2.

8.      At the interview, the inventors proposed a new amendment that the examiner concluded "would distinguish . . . over the current rejections."  *Id.* at 4.

9.      East Coast filed the amendment, which **<u>deleted</u>** "**maps *non-standard fittings*** to standard fittings" from the claims and **<u>replaced</u>** it with a requirement for "**mapping** all ***components of the imported geometrical information*** to a plurality of standard fittings."  Freed Decl., Ex. I, June 4, 2008, Amendment at 3 (emphasis added).

10.     The examiner allowed the amended claims and ***specifically identified*** <u>that</u> mapping as one of the reasons for allowance.  Freed Decl., Ex. J, Oct. 17, 2008 Notice of Allowance at 3–5.

11.     Autodesk's prior art ABS 2004 software was not made of record during any of the patent procurement proceedings.  Freed Decl., Exs. B, C, and D, cover pages ("References Cited").

12.     East Coast was a member of the Autodesk Developer Network.  Freed Decl., Ex. K (Autodesk Developer Network Master Agreement Between Autodesk, Inc. and East Coast CAD/CAM).

13.     As stated in the Master Agreement, Autodesk "develops and markets software products for use in many vertical markets and desires to make its products available to third party Master Developers for the purpose of creating products compatible with Autodesk products."  *Id.* at 1.

14.     In section 3.A of the Autodesk Developer Master Agreement, Autodesk granted to East Coast a "license to use the Software made available to Master Developer by Autodesk . . .

for the purposes of modifying, enhancing, updating, marketing, and/or publishing of Master Developer's products and/or services to enable such products and/or services to be used and/or interfaced with the Software . . . the Software shall be used only be employees and/or independent contractors of Master Developer who have signed confidentiality Master Agreements . . . ." *Id.* at 3.

15.     The user guide for the prior art ABS 2004 software (Freed Decl., Ex. L, Autodesk Building Systems Concepts Guide 2004, AD000057–504) describes "Changing a Duct or Pipe Fitting in a Run." *Id.* at AD000230.

16.     "Default part preferences specify parts to be used during layout. However, you can still change the part later." *Id.* at AD000162.

17.     "Autodesk Building Systems provides an array of **part catalogs for part selection** during design . . . Building systems are typically assembled from fabricated components, often referred to as 'off-the-shelf' parts. Autodesk Building Systems part catalogs offer an extensive collection of parts for use throughout design layouts." *Id.* at AD000124.

18.     With the 2004 ABS system "If you want to replace . . . a specific part by name . . . click the Part Filter tab, and then specify the individual parameters available for the part subtype that you have chosen [and] click the Details button to expand the list of parts that match the parameters you specified, and then select a part from the Part Size Name list." *Id.* at AD000231.

19.     "**Part selection** depends on basic part **properties such as size, shape, material, and connections**.  These properties are specified in the Add dialog boxes. *** Specific properties are assigned to every part type in Autodesk Building Systems." *Id.* at AD000135 (emphasis added).

20.     Autodesk's Interrogatory No. 5, among other things, requested from East Coast "an identification of each element that you allege is not present," separately for each of Autodesk's prior art references.

21.     The very construction of the term "fabrication information" that was urged by East Coast was adopted by this Court: "information that is useful or necessary to fabricate a component or a system."  (Doc. No. 67 at 16.)

22.     Without any mention of that construction or of ABS 2004's use of **properties such as size, shape, material, and connections** when "Changing a Duct or Pipe Fitting in a Run," East Coast responded to Autodesk's Interrogatory No. 5 that "the 2004 ABS system functionality shows no information for any particular component necessary for the design and fabrication of the system.  Thus, the 2004 ABS system lacks a teaching of 'fabrication information' and cannot anticipate the claims."  Freed Decl., Ex. M (East Coast's Supplemental Response to Autodesk's Interrogatory Nos. 4 & 5) at 4–5.

23.     But East Coast has admitted that "it was aware of ABS 2004" and that its designated inventors "Massaro and Derocher are and were employees of East Coast with managerial positions."  (Doc. No. 57 at ¶ 16.)

24.     And when East Coast was asked in Autodesk's Interrogatory No. 3 to "describe in detail the circumstances (including dates and individuals' roles) of conception, diligence, and reduction to practice for" the asserted patents, East Coast described the alleged inventions as beginning when "EastCoast's Massaro and Derocher observed the capabilities of Autodesk ABS in February 2004 at the AHR" and continuing "[a]s EastCoast became more familiar with the ABS product."  Freed Decl., Ex. Q (EastCoast's Response to Autodesk's First Set of Interrogatories) at 3–4.

### III.   LEGAL PRINCIPLES

#### A.   Prosecution History Disclaimer

Regarding how "the claim as a whole" should be understood, the patent procurement "history gives insight into . . . what the applicant gave up in order to meet the Examiner's objections." *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992). That recapture of what was cancelled "is precluded by [t]he doctrine of prosecution disclaimer is well established in Supreme Court precedent." *Omega Eng'g,* 334 F.3d at 1323. "[P]rosecution disclaimer" also applies in "a familial patent" employing the same "claim language." *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007).

"[T]he patentee" is not "free to gain the supposed advantage of the rejected claims," regardless of whether "the cancelled or rejected claim be narrower." *Schriber-Schroth*, 311 U.S. at 221–22. An applicant "has two choices: either to amend the claim or to appeal the rejection. He may not both make the amendment and then challenge its necessity in a subsequent infringement action on the allowed claim." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1356 (Fed. Cir. 1998).

#### B.   Accusing Prior Art Functionality of Infringement

Patent claims define the scope of the patent grant; and when it comes to their validity, applying a claim at a scope that also applies to what was done before invalidates the claim under the axiom "that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001); *Peters v. Active Mfg. Co.*, 129 U.S. 530 (1889). That truism holds for any claim, "regardless of whether it also covers subject matter not in the prior art." *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999).

7

### C.     Rule 11

Federal Rule of Civil Procedure 11 is aimed at "curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397–98 (1990)).  Every paper presented is to constitute a reasonably based certification that it does not advocate a frivolous position, does not pursue an unfounded claim, and was not filed for some improper purpose.  *Id.* at 783–84; Fed. R. Civ. P. 11(b).

Under First Circuit precedent[2], "[w]hether a litigant breaches his or her duty to conduct a reasonable inquiry into the facts and the law 'depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances.'" *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999).  It is "objectively unreasonable" and "frivolous" for a patentee to assert that a patent covers what was disclaimed in the procurement proceedings and is in the prior art.  *Cartner v. Alamo Group, Inc.*, Case Nos. 13-1293, 13-1314, 2014 WL 1394951, at *4–6 (Fed. Cir. Apr. 11, 2014).

## IV.    ARGUMENT

### A.     East Coast Both Disregarded that What Infringes if Later Anticipates if Earlier and Relied on a Nonexistent Distinction from ABS 2004

In asserting that the accused AutoCAD MEP software infringes, East Coast has contended that the AutoCAD MEP software satisfies the mapping requirement of its patent claims by "**converting a non-standard layout elbow into a standard elbow for fabrication**." Freed Decl., Ex. N (East Coast's Final Infringement Contentions) at 12 (emphasis added).  East Coast blithely ignores having convinced the patent examiner to allow those claims by deleting *maps non-standard fittings to standard fittings* and replacing it with the requirement for *mapping*

---

[2] Regional circuit law applies to Rule 11 sanctions.  *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1406–07 (Fed. Cir. 2004).

*all components of the imported geometrical information to a plurality of standard fittings*.
Likewise, East Coast ignores that the examiner in his reasons for allowance identified that
amended mapping recitation.

Paying no mind to any of that, East Coast professes entitlement to now treat *maps non-standard fittings to standard fittings* and *mapping all components of the imported geometrical information to a plurality of standard fittings* as being one in the same.  According to East
Coast's contentions, that *mapping all components of the imported geometrical information to a plurality of standard fittings* is satisfied simply because AutoCAD MEP converts **a non-standard layout elbow** component **into a standards elbow fitting** for fabrication.  (Freed Decl.,
Ex. N (East Coast's Final Infringement Contentions) at 12.)

Even if East Coast were permitted to thus recapture what East Coast gave up to acquire
its patent claims (which, as discussed in section B, below, is NOT the case), East Coast was not
permitted to unreasonably ignore that the ability to convert a non-standard component into a
standard fitting for fabrication was unquestionably present in Autodesk's prior art 2004 ABS
software.  The 2004 ABS software starts with default parts which are non-standard fittings that
can be converted during part selection to "off-the-shelf" standard fittings.  *See* Freed Decl., Ex. L
at AD000162 ("Default part preferences specify parts to be used during layout. However, you
can still change the part later.") and *id.* at AD000124 ("Autodesk Building Systems provides an
array of **part catalogs for part selection** during design . . . Building systems are typically
assembled from fabricated components, often referred to as 'off-the-shelf' parts. Autodesk
Building Systems part catalogs offer an extensive collection of parts for use throughout design
layouts.").

9

The user guide describes "Changing a Duct or Pipe Fitting in a Run". *Id.* at AD000230. It explains that "If you want to replace . . . a specific part by name . . . click the Part Filter tab, and then specify the individual parameters available for the part subtype that you have chosen [and] click the Details button to expand the list of parts that match the parameters you specified, and then select a part from the Part Size Name list." *Id.* at AD000231. Earlier the guide describes that the "**Part selection** depends on basic part **properties such as size, shape, material, and connections**. These properties are specified in the Add dialog boxes. *** Specific properties are assigned to every part type in Autodesk Building Systems." *Id.* at AD000135 (emphasis added).

Consequently, Autodesk's prior art ABS 2004 plainly uses "fabrication information" in using **properties such as size, shape, material, and connections** when "Changing a Duct or Pipe Fitting in a Run." Any assertion that that information is not useful to fabricate a component or a system—and accordingly within East Coast's own construction of "fabrication information" (Doc. No. 67 at 16)—is not just false. It is also frivolous.

East Coast was intimately familiar with the prior art 2004 ABS software, having closely collaborated with Autodesk as a member of the Autodesk Developer Network with confidential access to analyze Autodesk's software. *See* Freed Decl., Ex. K at 3 ("License to Software"); *see also* Freed Decl., Ex. Q at 3–4; Doc. No. 57 at ¶ 16. Indeed, East Coast has itself described the alleged inventions as beginning when "EastCoast's Massaro and Derocher observed the capabilities of Autodesk ABS in February 2004 at the AHR" and continuing "[a]s EastCoast became more familiar with the ABS product." Freed Decl., Ex. Q (EastCoast's Response to Autodesk's First Set of Interrogatories) at 3–4.

And when asked how the asserted patent claims could be valid in light of the prior art 2004 ABS software at the scope now asserted for them, East Coast did not even hint at reliance on other than a single alleged, but nonexistent, distinction of the patent claims from that prior art 2004 ABS system.  Specifically, notwithstanding that the ABS 2004 clearly uses **properties such as size, shape, material, and connections** when "Changing a Duct or Pipe Fitting in a Run," East Coast (with direct access to the contrary) feebly stated that "the 2004 ABS system functionality shows no information for any particular component necessary for the design and fabrication of the system. Thus, the 2004 ABS system lacks a teaching of 'fabrication information' and cannot anticipate the claims."  Freed Decl., Ex. M (East Coast's Supplemental Response to Autodesk's Interrogatory Nos. 4 & 5) at 4–5.

### B.    East Coast has Unreasonably Attempted to Recapture Claim Scope Disclaimed During Patent Procurement

Even a cursory review of the patent procurement record reveals that East Coast's claims were allowed only after East Coast removed the claim language *maps non-standard fittings to standard fittings* in favor of claim language calling for *mapping all components of the imported geometrical information to a plurality of standard fittings*.  Yet, East Coast steadfastly maintains that the accused AutoCAD MEP software satisfies *mapping all components of the imported geometrical information to a plurality of standard fittings* by "converting a non-standard layout elbow into a standard elbow for fabrication."   Freed Decl., Ex. N (East Coast's Final Infringement Contentions) at 12 (emphasis added).[3]

The very same *mapping all components of the imported geometrical information to a plurality of standard fittings* is a feature of every asserted claim.  Freed Decl., Ex. B at Cols. 7–

---

[3] The Rule 11 safe harbor opportunity to withdraw that contention, as well as the contention that Autodesk's prior art ABS 2004 does not use fabrication information," was extended to East Coast in a May 12, 2014 letter.  Freed Decl., Ex. O.  East Coast has not taken safe harbor.

10, Ex. C at Cols. 7–8, and Ex. D at Cols. 7–8. Its asserted applicability to the disclaimed mapping of non-standard fittings to standard fittings has been East Coast's infringement theory from the outset of this litigation,[4] notwithstanding that the allowed claims cannot legitimately "cover what was thus eliminated from the patent, *i.e.*, mapping non-standard fittings to standard fittings. *Schriber-Schroth,* 311 U.S. at 220–21.

None of East Coast's original claims mentioned mapping. Freed Decl., Ex. A at 16–18. They were rejected by the patent examiner over a prior art patent to Smith, Freed Decl., Ex. E at 2, and in response to that rejection were initially amended by East Coast to recite:

> wherein the standards information includes information that, when applied to the geometrical information, **maps *non-standard fittings*** to standard fittings

Freed Decl., Ex. F at 3 (emphasis added). The examiner found East Coast argument that they were then patentable over the Smith reference to be "not persuasive" and maintained the rejection over Smith. Freed Decl., Ex. G at 15. The inventors met with the examiner, discussed the Smith prior art, and proposed a new amendment which the examiner concluded "would distinguish . . . over the current rejections." Freed Decl., Ex. H, Interview Summary at 4. East Coast filed the new amendment, deleting *maps non-standard fittings to standard fittings* and replacing it with *mapping all components of the imported geometrical information to a plurality of standard fittings.* Freed Decl., Ex. I, at 3. The examiner **specifically identified** the changed mapping recitation in his reasons for allowance of the amended claims. Freed Decl., Ex. J at 3–5.

---

[4] East Coast's Final Infringement Contentions were served out of time because East Coast mis-docketed the due date. When eventually served, East Coast's Final Infringement Contentions amounted to East Coast's preliminary contentions relabeled as "final" contentions. *See* Freed Decl., Ex. P.

In short, to overcome the rejection over the prior art Smith reference, East Coast chose "to amend the claim" differently, rather than "appeal the rejection," and East Coast is now bound by that choice. *See Bai v. L & L Wings, Inc.*, 160 F.3d at 1356. East Coast is now **not** "free to gain the supposed advantage of the rejected claims" as initially amended. *See Schriber-Schroth*, 311 U.S. at 221–22. The procurement record clearly and unambiguously shows that East Coast "gave up in order to meet the Examiner's objections" its initially amended claim to mapping *non-standard fittings to standard fittings*. *See Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1206 (Fed.Cir.1992). So based on that clear and unambiguous record, recapture is precluded by "[t]he doctrine of prosecution disclaimer [that] is well established in Supreme Court precedent." *Omega Eng'g*, 334 F.3d at 1323. That applies to each "familial patent" employing the same "claim language," which means it applies to all the claims asserted here. *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007).

This disclaimer should not have gone unnoticed in any **reasonable** pre-filing investigation by and on behalf of East Coast, which requires a party to "***interpret the asserted patent claims*** and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004) (emphasis added).

### C.   East Coast Should Be Sanctioned and Ordered to Pay Autodesk's Attorney Fees Under Fed. R. Civ. P. 11(c)

"Whether a litigant breaches his or her duty to conduct a reasonable inquiry into the facts and the law 'depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances.'" *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999). The factors assessed include "the complexity of the subject matter, the party's familiarity with it, the time available for the inquiry, and the ease (or difficulty) of access to the requisite

information." _Id._ (emphasis added).  The factors here overwhelmingly favor sanctions against East Coast and its attorneys.

With regard to familiarity with and complexity of subject matter, the asserted patents here were filed by East Coast employees and had a straightforward, not complex, procurement history whereby East Coast gave up claim to mapping non-standard fittings to standard fittings.  And as a member of the Autodesk Developer Network, East Coast was familiar with the fact that the accused mapping in AutoCAD MEP software ("**converting a non-standard layout elbow into a standard elbow for fabrication**") was unquestionably present in Autodesk's prior art 2004 ABS software.  Furthermore, there is nothing complex about the 2004 ABS software using "fabrication information" in its use of **properties such as size, shape, material, and connections**" when "Changing a Duct or Pipe Fitting in a Run," which belies East Coast's assertion that the prior art 2004 ABS system lacks a teaching of "fabrication information" and thus cannot anticipate the claims.

As for the time available for inquiry, East Coast had plenty of time to conduct a reasonable investigation.  The issues giving rise to this motion are common to all the patents, the first of which issued in March 2009—years before suit was filed by East Coast on December 28, 2012.

Finally, the requisite information was easily accessible to East Coast and/or already in East Coast's possession.  That information included: (1) the file history from the prosecution of East Coast's own patent application, which contains the disclaimer of East Coast's claim to mapping non-standard fittings to standard fitting and (2) the Autodesk prior art ABS 2004 software to which East Coast had confidential access under its license as a member of the Autodesk Developer Network.

14

East Coast has disregarded two well settled principles of law:  what supposedly infringes if later, anticipates if earlier; and claim scope relinquished during the procurement proceedings cannot be recaptured.  The totality of circumstances exacerbates, rather than justifies, East Coast's disregard for those principles.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Autodesk respectfully requests that the Court grant its motion for sanctions pursuant to Rule 11.  Specifically, Autodesk requests that this court find that East Coast violated Rule 11 in relation to two fundamental principles: patent claims cannot be read for infringement in a way that they would also encompass the prior art, and a patentee cannot recapture claim scope relinquished during the patent procurement proceedings.  Autodesk further requests the Court to direct payment to Autodesk all its reasonable attorney fees and other expenses directly resulting from the violation.

Dated: June 9, 2014                    Respectfully submitted,

                                       /s/ Joel M. Freed
                                       Richard C. Nelson, Esq. (NH Bar #1867)
                                       Damian R. LaPlaca, Esq. (*pro hac vice*)
                                       Robert F. Callahan, Jr., Esq. (NH #21167)
                                       Nelson Kinder + Mosseau PC
                                       99 Middle Street
                                       Manchester, NH 03101
                                       Telephone: (603) 647-1800

                                       Donald J. Perreault, Esq. (NH Bar #12138)
                                       Grossman, Tucker, Perreault & Pfleger, PLLC
                                       55 S. Commercial Street
                                       Manchester, NH 03101
                                       Telephone: (603) 668-6560

                                       Joel M. Freed, Esq. (*pro hac vice*)
                                       Alexander P. Ott (*pro hac vice*)
                                       McDermott Will & Emery LLP
                                       The McDermott Building
                                       500 North Capitol Street, N.W.
                                       Washington, D.C. 20001
                                       Telephone: (202) 756-8000

                                       *Attorneys for Defendant Autodesk, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2014, I served all parties registered with ECF for this matter with a true copy of the foregoing Brief in Support of Autodesk, Inc.'s Motion for Sanctions Pursuant to Rule 11 by virtue of transmitting the same to the Court via the ECF system:

                                       /s/ Joel M. Freed

16