**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

East Coast Sheet Metal
Fabricating Corp., d/b/a
EastCoast CAD/CAM

    v.                                                    Civil No. 12-cv-517-LM
                                                          Opinion No. 2015 DNH 150
Autodesk, Inc.


**O R D E R**


    East Coast Sheet Metal Fabricating Corp. ("EastCoast") sued Autodesk, Inc. ("Autodesk") for patent infringement and also asserted several claims under state law, which it dropped before judgment was rendered on them.  In an order dated January 15, 2015, the court: (1) granted summary judgment to Autodesk on its defense that the patents in suit were invalid, due to the unpatentability of EastCoast's subject matter; (2) ruled in Autodesk's favor on its defense that the accused products did not infringe the patents in suit; and (3) denied as moot Autodesk's motion for judgment as a matter of law that EastCoast could not prove damages in the form of lost profits.  In an order dated March 3, 2015, the court amended its previous order to specify that it was dismissing, as moot, Autodesk's three counterclaims for declaratory judgment, including a request for a declaratory judgment that the patents in suit were

unenforceable due to EastCoast's inequitable conduct before the
U.S. Patent and Trademark Office ("PTO"). Before the court is
Autodesk's motion for attorney's fees and related nontaxable
expenses. EastCoast objects. It also suggests, in the
alternative, that the court could defer ruling on attorney's
fees until its appeal has run its course. The court declines to
defer its consideration of the motion before it.[1] Rather, for
the reasons that follow, the court denies Autodesk's motion for
attorney's fees.

## I. The Legal Standard

"Although parties to civil litigation typically bear the
burden of paying their own counsel, see Alyeska Pipeline Serv.
Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975), statutes and
contractual provisions sometimes alter that burden." Cent.
Pension Fund of the Int'l Union of Operating Eng'rs &
Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 3
(1st Cir. 2014) (parallel citations omitted). The Patent Act

---

[1] When presented with a similar request, Judge Wilkin
declined: "If this Court decides the fees issue now, the Federal
Circuit may consider the overlapping summary judgment and fees
issues together, saving judicial resources." Cf. Linex Techs.,
Inc. v. Hewlett-Packard Co., No. C 13-159 CW, 2014 WL 4616847,
at *3 (N.D. Cal. Sept. 15, 2014) (citing Nystrom v. TREX Co.,
339 F.3d 1347, 1350 (Fed. Cir. 2003) (opposing piecemeal
appeals)); see also Intex Rec. Corp. v. Team Worldwide Corp., --
- F. Supp. 3d ---, ---, 2015 WL 135532, at *4 (D.D.C. Jan. 9,
2015).

includes a provision that can shift the burden of paying for
counsel.  See 35 U.S.C. § 285.  In addition, federal courts have
the inherent power to award attorney's fees as a sanction.  See
Charbono v. Sumski (In re Charbono), --- F.3d ---, ---, 2015 WL
3653610, at *2 (1st Cir. June 15, 2015).  The Federal Rules of
Civil Procedure ("Federal Rules") also empower courts to
sanction parties by awarding attorney's fees.  See Fed. R. Civ.
P. 11(c)(4).  Having identified three basic sources of authority
for the assessment of attorney's fees, the court describes in
more detail the legal standards associated with each.

    A. The Patent Act

    The Patent Act provides that "[t]he court in exceptional
cases may award reasonable attorney fees to the prevailing
party." 35 U.S.C. § 285.  "[A]n 'exceptional' case is simply
one that stands out from others with respect to the substantive
strength of a party's litigating position (considering both the
governing law and the facts of the case) or the unreasonable
manner in which the case was litigated." Octane Fitness, LLC v.
ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).
Under the second branch of the § 285 analysis, unreasonable
litigation generally refers to litigation misconduct, which
"includes 'willful infringement, fraud or inequitable conduct in

procuring the patent, misconduct during litigation, vexatious or
unjustified litigation, conduct that violates Fed. R. Civ. P.
11, or like infractions.'"  Id. (quoting Brooks Furn. Mfg., Inc.
v. Dutailier Int'l, Inc., 393 F.3d 1378 (Fed. Cir. 2005),
overruled on other grounds by Octane Fitness, 134 S. Ct. 1749).

A party must prove its entitlement to fees under § 285 by a
preponderance of the evidence.  See Octane Fitness, 134 S. Ct.
at 1758.  "District courts may determine whether a case is
'exceptional' in the case-by-case exercise of their discretion,
considering the totality of the circumstances."  Id. at 1756.
Given that focus on the totality of the circumstances, "a case
should be viewed more as an 'inclusive whole' rather than as a
piecemeal process when analyzing fee-shifting under § 285."
Therasense, Inc. v. Becton, Dickinson & Co. (Therasense II), 745
F.3d 513, 516 (Fed. Cir. 2014) (citing Comm'r, INS v. Jean, 496
U.S. 154, 161-62 (1990)).

B. Inherent Power

Notwithstanding "the venerable 'American Rule,' which
provides that litigants shall ordinarily pay their own lawyers,"
In re Charbono, 2015 WL 3653610, at *4 (citations omitted),
courts may, in the exercise of their inherent power, "award
[attorney's] fees when a party has 'acted in bad faith,

vexatiously, wantonly, or for oppressive reasons.'" RTR Techs., Inc. v. Helming, 707 F.3d 84, 94 (1st Cir. 2013) (quoting Alyeska Pipeline, 421 U.S. at 258-59).  A party requesting an award of attorney's fees pursuant to the court's inherent power must make its showing of bad faith by clear and convincing evidence.  See Dubois v. U.S. Dep't of Agric., No. CIV.A. 95-50-B, 1998 WL 34007445, at *2 (D.N.H. July 17, 1998) (citing Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986); Autorama Corp. v. Stewart, 802 F.2d 1284, 1288 (10th Cir. 1986)).  "District courts are well-advised to use their inherent power cautiously and to grant attorneys' fees sparingly under that power." RTR Technologies, 707 F.3d at 94 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Estate of Hevia v. Portrio Corp., 602 F.3d 34, 46 (1st Cir. 2010)). Indeed, an award of attorney's fees under the court's inherent power is "reserved for egregious circumstances," Mullane v. Chambers, 333 F.3d 322, 338 (1st Cir. 2003) (quoting Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995)), and "compelling situations," Dubois v. U.S. Dep't of Agric., 270 F.3d 77, 80 (1st Cir. 2001).

C. Rule 11 Power

The Federal Rules "impose[ ] a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." Enos v. Union Stone, Inc., 732 F.3d 45, 50 (1st Cir. 2013) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)).  "Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011) (citing Fed. R. Civ. P. 11(b)).  Those sanctions may include attorney's fees.  See Fed. R. Civ. P. 11(c)(4).

## II. Discussion

Autodesk bases its request for attorney's fees on 35 U.S.C. § 285, and also asks the court to invoke both its inherent power and its Rule 11 power to sanction EastCoast by imposing a fee award.  It does so in the following way:

> Autodesk's motion is based on 35 U.S.C. § 285 and Octane Fitness, as well as on East Coast's sanctionable Rule 11 conduct and/or the Court's "inherent powers" as a sanction for East Coast's bad faith conduct, as explained above.  Any portion claimed that is available based on more than one of

6

> those grounds is sought based on all those grounds
> under which it is available.  Any portion unavailable
> on any one or more of the stated grounds is requested
> to the full extent available under any other of the
> stated grounds.

Def.'s Br. (doc. no. 197-1) 14 (citations omitted).  While

Autodesk invokes § 285, Rule 11, and the court's inherent

powers, it relies nearly exclusively upon § 285 cases in its

memorandum of law.  Moreover, given the Supreme Court's

observation that a party's misconduct can be exceptional for the

purposes of § 285 without rising to the level of being

independently sanctionable, see Octane Fitness, 134 S. Ct. at

1757, it seems clear that a party that is not entitled to

attorney fees under § 285 would, necessarily, not be entitled to

an award of fees under Rule 11 or pursuant to the court's

inherent power.  Accordingly, the court will analyze Autodesk's

request for fees under the legal principles applicable to § 285.

There is another reason for disregarding Autodesk's

invocation of Rule 11.  In an order dated September 9, 2014, the

court denied Autodesk's Rule 11 motion but did so "without

prejudice to Autodesk moving for sanctions if and when it

receives a favorable disposition of EastCoast's infringement

action."  Order (doc. no. 107) 3-4.  The court's order invited

Autodesk to submit another Rule 11 motion, but did not waive or

alter any of the procedural rules governing the litigation of

such motions.  One of those rules is that "[a] Rule 11 motion must be made 'separately from any other motion,' Fed. R. Civ. P. 11(c)(2), and 'not simply . . . as an additional prayer for relief contained in another motion.'" Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 244 (1st Cir. 2010) (quoting Fed. R. Civ. P. 11(c)(2) advisory committee's note).  Because Autodesk has not filed a separate Rule 11 motion, the court may not award attorney's fees to Autodesk as a Rule 11 sanction against EastCoast.  See Lamboy-Ortiz, 630 F.3d at 244-45; see also Irwin Indus. Tool Co. v. Bibow Indus., Inc., Civ. Action No. 11-30023-DPW, 2014 WL 1323744, at *1 (D. Mass. Mar. 31, 2014).  That said, conduct that would constitute a violation of Rule 11 may qualify as litigation misconduct for the purposes of § 285.  See Octane Fitness, 134 S. Ct. at 1756.

In the discussion that follows, the court considers the two branches of the § 285 analysis identified by the Supreme Court in Octane Fitness, i.e., the strength of EastCoast's litigating position, and the manner in which it has litigated this case.  See 134 S. Ct. at 1756.  The court begins with the manner in which EastCoast has litigated, which seems to be the primary focus of Autodesk's claim for attorney fees.

A. Manner in Which EastCoast Has Litigated

The court considers in turn Autodesk's arguments that it is entitled to attorney fees under 35 U.S.C. § 285 because EastCoast: (1) engaged in inequitable conduct before the PTO; (2) pursued frivolous infringement claims; (3) pursued frivolous non-patent claims; and (4) engaged in discovery misconduct. Notwithstanding its obligation to consider this case as a whole, see Octane Fitness, 134 S. Ct. at 1756, the court will, for analytical purposes, consider Autodesk's arguments one by one. Cf. SFA Sys., LLC v. Newegg Inc., --- F.3d ---, ---, 2015 WL 4154110, at *3 (Fed. Cir. July 10, 2015).

1. Conduct During Patent Procurement

A patentee's inequitable conduct while procuring its patent may warrant a finding of exceptionality for the purposes of § 285.  See Octane Fitness, 134 S. Ct. at 1756; see also Stragent, LLC v. Intel Corp., No. 6:11-cv-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014); Momenta Pharms., Inc. v. Teva Pharms. USA, Inc., 60 F. Supp. 3d 261, 263 (D. Mass. 2014).

Autodesk first claimed that EastCoast engaged in inequitable conduct before the PTO in a counterclaim seeking a declaratory judgment of unenforceability.  See Answer to Second Am. Compl. (doc. no. 32) 21-25.  After the court granted summary

judgment in favor of Autodesk, and dismissed Autodesk's
counterclaims as moot, Autodesk moved the court to amend its
"judgment . . . to reflect that Autodesk's inequitable conduct
claim was dismissed as a matter of the Court's discretion and
that Autodesk is entitled to raise enforceability in its fees
motion."  Mot. to Alter or Amend (doc. no. 198) 1-2.  In its
order granting Autodesk's motion, the court declined "to add an
additional sentence to the order that specifically entitles
Autodesk to raise the issue of inequitable conduct in its motion
for fees."  Order (doc. no. 210) 2.  Rather, the court directed
that

> [i]n the context of Autodesk's motion for fees, the
> parties shall litigate both: (1) the propriety of
> addressing inequitable conduct in the context of the
> motion for fees (an issue that has already been joined
> by the parties); and (2) the merits of Autodesk's
> inequitable-conduct argument (which has also been
> addressed by the parties).

Id. at 3.

Although the parties have addressed the merits of
Autodesk's inequitable-conduct claim, they have not addressed
the question of whether it was proper to litigate the issue of
inequitable conduct for the first time in a motion for attorney
fees.  In the face of that silence, and Autodesk's in
particular, coupled with lingering concerns about "the counsel
fee tail continuing endlessly to wag the merits' dog," Wagenmann

v. Adams, 829 F.2d 196, 226 (1st Cir. 1987), the court has researched the question it directed the parties to brief.  That research, in turn, confirms the propriety of considering Autodesk's inequitable-conduct argument at this stage of the proceedings.

In Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp. (Brasseler I), 182 F.3d 888 (Fed. Cir. 1999), the Federal Circuit affirmed the district court's grant of summary judgment to the defendant on a patent-infringement claim.  See id. at 892.  Then, it "remanded [the case] to the district court for a determination of whether [it] was an exceptional case entitling Stryker to attorney fees in accordance with 35 U.S.C. § 285." Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp. (Brasseler II), 267 F.3d 1370, 1375 (Fed. Cir. 2001).  In remanding, the court of appeals acknowledged that Stryker appeared to have based its § 285 attorney fees claim on allegations beyond those involving the legal theory that entitled it to summary judgment.  See Brasseler I, 182 F.3d at 892.  And, indeed, while Stryker won summary judgment because the patent in suit was invalid under 35 U.S.C. § 102(b), see id. at 889, it moved for attorney fees on grounds that, among other things, the patentee had engaged in misconduct before the PTO, see Brasseler II, 267 F.3d at 1375, an issue that played no role in the grant of summary judgment.

Based upon <u>Brasseler II</u>, and the Federal Circuit's remand order acknowledging that the attorney fees issue would involve legal questions beyond those that supported the grant of summary judgment, this court cannot agree with EastCoast that Autodesk is barred from litigating the question of inequitable conduct before the PTO in its motion for attorney fees.  Accordingly, the court turns to the merits of that argument.

Autodesk argues that EastCoast inventors Joseph Massaro and David Derocher engaged in inequitable conduct "when they withheld a full disclosure of [a particular piece of] prior art with which they were intimately familiar."  Def.'s Br. (doc. no. 197-1) 10.  More specifically, Autodesk contends: "Although [that prior art] was mentioned in the application for the patents in suit, East Coast [sic] failed to mention that [it] satisfied all or nearly all of the claimed features."  <u>Id.</u> at 11.  Where, precisely, that failure took place, Autodesk does not say.  Autodesk also makes a vague and ill-supported reference to an interview at the PTO involving an examiner and the inventors of the apparatuses claimed in the patents in suit.[2]

---

[2] That reference is ill-supported because in its argument on this point, Autodesk cites to a portion of Derocher's declaration that says nothing about his interview at the PTO. <u>See</u> Def.'s Br. (doc. no. 197-1) 11 (citing <u>id.</u>, Ex. M (doc. no. 197-15), at 11:11-21, 15:21-17:12).

In addition to arguing that the court should not consider Autodesk's inequitable-conduct argument in the first instance, EastCoast also argues that a patent applicant's characterization of prior art cannot form the basis for an inequitable-conduct claim.  EastCoast has the better argument.

Generally speaking, "[i]nequitable conduct is an equitable defense to patent infringement." Am. Calcar, Inc. v. Am. Honda Motor Co., 768 F.3d 1185, 1188 (Fed. Cir. 2014) (citing Therasense, Inc. v. Becton, Dickinson & Co. (Therasense I), 649 F.3d 1276, 1285 (Fed. Cir. 2011)).  A party raising that defense must prove "that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." Am. Calcar, 768 F.3d at 1188-89 (quoting Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333, 1344 (Fed. Cir. 2013)).  When raised as a defense, inequitable conduct must be proved by clear and convincing evidence.  See Am. Calcar, 768 F.3d at 1188.  But where, as here, inequitable conduct is raised as a basis for an award of attorney fees under 35 U.S.C. § 285, the court applies the preponderance of the evidence standard prescribed by Octane Fitness.  See 134 S. Ct. at 1758.

In its opening brief, Autodesk relied upon LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n, 958 F.2d 1066 (Fed. Cir. 1992).

13

In that case, the Federal Circuit affirmed a determination that a patentee had committed inequitable conduct by failing to disclose material prior art.  See id. at 1076.  Here, Autodesk acknowledges that EastCoast did disclose the prior art at issue, but accuses Autodesk of making a "selective disclosure" of that prior art and misrepresenting it to the PTO during the course of an interview.

In its supplemental brief, EastCoast relies upon Young v. Lumenis, Inc., 492 F.3d 1336 (Fed. Cir. 2007).  That case stands for the common-sense proposition that when a patent examiner has been alerted to a prior art reference and can form his or her own opinion of it, the applicant's characterization is not an "affirmative misrepresentation of material fact" that would constitute inequitable conduct.  Id. at 1348 (quoting Molins v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)).

Autodesk responds by citing Apotex Inc. v. UCB, Inc., 763 F.3d 1354 (Fed. Cir. 2014), in which the Federal Circuit affirmed the district court's decision that the plaintiff's patent was unenforceable due to inequitable conduct.  But Apotex involved a much wider range of conduct than that alleged by Autodesk.  In Apotex, the patentee completely withheld certain relevant prior art.  See id. at 1359.  It also omitted important details regarding the prior art from the specification.  See id.

at 1361.  Furthermore, the patentee repeatedly made affirmative misrepresentations of material facts to the PTO through counsel and a hired expert, deliberately withheld the truth from that expert, and represented in the specification that the inventor had conducted experiments that he had not conducted.  See id. at 1361-62.

The alleged misconduct before the PTO on which Autodesk bases its claim for attorney fees pales in comparison with the misconduct established in Apotex.  Here, Autodesk identifies no prior art that EastCoast withheld from the PTO.  It does not identify any deficiency in the treatment of the prior art in the specifications of the patents in suit.  It identifies no pattern of misrepresentation by EastCoast, and it does not claim that EastCoast manufactured false evidence for submission to the PTO. Rather, Autodesk's argument is based upon two factors, EastCoast's "characterization" of prior art that it disclosed to the PTO (prior art that the examiner was free to examine him or herself), and a single meeting with a patent examiner about which Autodesk has produced little evidence.  In sum, the conduct by the patentee in Apotex stands out as exceptionally egregious; EastCoast's conduct before the PTO does not.  Thus, that conduct provides no basis for an award of attorney fees to Autodesk under 35 U.S.C. § 285.

15

## 2. Strength of EastCoast's Patent Claims

Autodesk next contends that EastCoast is liable for attorney fees because it was frivolous for EastCoast to accuse two specific Autodesk products of infringement, and it treated those products as infringing deep into the litigation process. In essence, Autodesk argues that EastCoast's pursuit of weak patent-infringement claims was an unreasonable and vexatious litigation tactic.  See SFA Systems, 2015 WL 4154110, at *5.

"'Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings,' and includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith." Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc. (Highmark I), 687 F.3d 1300, 1315-16 (Fed. Cir. 2012), vacated and remanded on other grounds by 134 S. Ct. 1744 (2014) (Highmark II), (quoting Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 549 (Fed. Cir. 2011); citing Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008)).  In other words, under the manner-of-litigation branch of the § 285 analysis, the problem with weak legal arguments arises when litigation is prolonged because of them.

16

In SFA Systems, the Federal Circuit described three cases in which it had affirmed district court findings of litigation misconduct that justified awards of attorney fees under 35 U.S.C. § 285. See 2015 WL 4154110, at *5-6. In the first of those cases, the patentee destroyed relevant documents and produced misleading extrinsic evidence. See id. at *5 (citing Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1324-25 (Fed. Cir. 2011)). In another case, the patentee misrepresented both the law of claim construction and the trial court's construction of the claims at issue and also introduced expert testimony that did not meet even the lowest standards for reliability. See id. at *6 (citing MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 920 (Fed. Cir. 2012)). Finally, in the third case described in SFA Systems, the court of appeals affirmed a finding of exceptionality when the patentee filed claims against an accused infringer's customers only to drop them after extensive litigation had taken place, misrepresented the date of key evidence, and used motion practice to hide false evidence. See id. (citing Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd., 726 F.3d 1359, 1367 (Fed. Cir. 2013)). With the guidance of SFA Systems in mind, the court turns to the specifics of this case.

EastCoast has filed a total of four complaints in this case. In its original complaint, it alleged that the patents in

17

suit were infringed by "products such as the AutoCAD MEP and

Autodesk Fabrication Products."  Compl. (doc. no. 1) ¶ 23.  In

its Amended Complaint, EastCoast alleged that the patents in

suit were infringed by

> products such as the AutoCAD MEP and Revit MEP product
> families, including AutoCAD MEP, AutoCAD MEP +
> Fabrication FABmep, AutoCAD MEP + Fabrication FABmep +
> Fabrication CADmep, AutoCAD MEP + Fabrication CADmep;
> Revit MEP, Revit MEP + Fabrication FABmep, Revit MEP +
> Fabrication FABmep + Fabrication CADmep.

Am. Compl. (doc. no. 15) ¶ 33.  The list of accused products in

the Second Amended Complaint is identical to the list in the

Amended Complaint.  See Second Am. Compl. (doc. no. 26) ¶ 33.

In its Third Amended Complaint, EastCoast identifies the accused

products this way:

> a) AutoCAD MEP in combination with Fabrication FABmep;
> b) AutoCAD MEP in combination with Fabrication CADmep;
> c) AutoCAD MEP in combination with Fabrication FABmep
> and Fabrication CADmep; d) Revit MEP in combination
> with Fabrication FABmep; e) Revit MEP in combination
> with Fabrication CADmep; and f) Revit MEP in
> combination with Fabrication FABmep and Fabrication
> CADmep.

Third Am. Compl. (doc. no. 119) ¶ 11.  The difference between

the Second Amended Complaint and the Third Amended Complaint is

that while the Second Amended Complaint asserted that the

patents in suit were infringed by AutoCAD MEP and Revit MEP

("the MEP products") standing alone, the Third Amended Complaint

only identifies the MEP products as infringing when used in

combination with other Autodesk products such as Fabrication FABmep and Fabrication CADmep.

Autodesk argues that EastCoast's case was exceptionally weak because the infringement claims against the MEP products were frivolous from the start, yet remained in the case until EastCoast finally decided not to include them in its Third Amended Complaint.  Autodesk's argument misses the mark.

EastCoast's claims that the MEP products, on their own, infringed the patents in suit may have been weak, and those claims did remain in the case for nearly 20 months.  But, the court is obligated to consider the case as a whole.  See Octane Fitness, 134 S. Ct. at 1756; Therasense II, 745 F.3d at 516.  In so doing, the court notes that at least the last three of EastCoast's complaints, if not all four, included claims against combinations of products, not just the MEP products standing alone.  Given the complexity and the relative novelty of the issues the court had to address in granting summary judgment to Autodesk on EastCoast's claims against its combinations of products, those claims were not frivolous.  Moreover, while it is true that EastCoast's claims against the MEP products standing alone remained in the case until EastCoast filed its Third Amended Complaint, it cannot be said that EastCoast's pursuit of those claims prolonged this case, given that

EastCoast jettisoned its claims against the MEP products before
its claims against the combination products were adjudicated.
This is not a case such as Cartner v. Alamo Group, Inc., 561
Fed. App'x 958, 969-70 (Fed. Cir. 2014), in which a plaintiff in
a patent-infringement suit continued to pursue claims after they
were rendered frivolous by the court's claim-construction order.

Under the totality of the circumstances of this case, the
appropriate question is not how long EastCoast's claims against
the MEP products remained in the case but, rather, whether the
litigation as a whole was prolonged by EastCoast's pursuit of
those claims.  Because EastCoast dropped its claims against the
individual MEP products before Autodesk received summary
judgment on EastCoast's claims against the product combinations,
EastCoast's pursuit of claims against the individual MEP
products does not qualify as litigation misconduct for the
purposes of 35 U.S.C. § 285.

### 3. Strength of EastCoast's Non-Patent Claims

Autodesk contends that EastCoast is liable for attorney
fees because it pursued several frivolous non-patent state-law
claims until it decided not to include them in its Third Amended
Complaint.  Like the argument discussed in the previous section,
this argument is also best understood as falling under the

manner-of-litigation rubric.  The court begins by noting that two of the supposedly frivolous state-law claims survived a motion to dismiss.  <u>See</u> Order (doc. no. 25) 1.  In any event, for the same reasons that apply to the patent claims discussed in the previous section, the court concludes that EastCoast's pursuit of its non-patent state-law claims against Autodesk does not qualify as litigation misconduct for the purposes of 35 U.S.C. § 285.

### 4. Discovery

Autodesk's final litigation-misconduct argument concerns the manner in which EastCoast conducted discovery.  Autodesk argues that this case is exceptional because: (1) EastCoast's original "complaint failed to identify any particular 'products or processes (by model number, trade name, or other specific identifying characteristic),' as required by SPR 2.1," Def.'s Br. (doc. no. 197-1) 12; (2) EastCoast's infringement contentions included illegible screenshots (from an Autodesk website) and substantively addressed only one of the three patents in suit; (3) EastCoast's final infringement contentions were identical to its preliminary infringement contentions; (4) EastCoast produced an expert opinion propounding a theory of infringement that was different from the one advanced in the

final infringement contentions; and (5) EastCoast initially
denied the existence of, then belatedly produced, a videotape on
which its expert based his opinion.  While Autodesk decries
those purported discovery abuses, it makes no real effort to
demonstrate how they cause EastCoast's litigation of this case
to stand out from other patent litigation.  EastCoast, in turn,
offers substantive responses to each of Autodesk's arguments.

Based upon its experience of "liv[ing] with [this] case
over a prolonged period of time," SFA Systems, 2015 WL 4154110,
at *6 (quoting Highmark II, 134 S. Ct. at 1748), the court
concludes that the discovery misconduct alleged by Autodesk is
insufficient to render this case exceptional.  Because
EastCoast's approach to discovery does not cause this case to
stand out, it provides no basis for an award of attorney fees
under 35 U.S.C. § 285.

## 5. Totality of the Circumstances

Having focused on the individual components of Autodesk's
manner-of-litigation argument, the court concludes its
discussion of this branch of the exceptionality analysis by
stepping back to consider the totality of the circumstances.
This case involved viable though ultimately unsuccessful patent-
infringement claims against Autodesk's combinations of products,

some overly inclusive pleadings that accused Autodesk's MEP
products, and several state-law claims that were dropped late in
the litigation.  Those factors weigh, at least mildly, in favor
of Autodesk's request for fees.  There are, however, some
strongly countervailing factors.  Two of EastCoast's state-law
claims survived a motion to dismiss.  EastCoast's position
prevailed at claim construction.  EastCoast prevailed on several
of Autodesk's motions for summary judgment before Autodesk
ultimately prevailed on one.  Finally, EastCoast dropped its
infringement claims against Autodesk's stand-alone products
before Autodesk prevailed at summary judgment, rather than
afterward, which means that EastCoast did not prolong this
litigation by pursuing those claims.  Moreover, this is not a
case involving a plaintiff advancing baseless claims against
multiple defendants in an attempt to extract nuisance-value
settlements; there is no patent troll here.

    In all, Autodesk has demonstrated that this is a relatively
typical patent case, not a case that stands out from the crowd
in terms of the manner in which a patentee has either procured
its patent or litigated its infringement claims.  Based upon the
totality of the circumstances, this case falls well short of
having been litigated by EastCoast in a manner that merits an
award of attorney fees under 35 U.S.C. § 285.

## B. Substantive Strength of EastCoast's Litigating Position

A case may be exceptional for the purposes of 35 U.S.C. § 285 if it stands out from others because of the weakness of a party's litigating position.  See Octane Fitness, 134 S. Ct. at 1756.  Under this rubric, Autodesk claims that EastCoast's position on damages was exceptionally weak because its claim for lost profits was objectively baseless and unreasonable and because its claim for a reasonable royalty was unreasonable and legally unsound.  Autodesk cites authority to support its arguments concerning the reasonableness of EastCoast's claims for damages.  However, it cites no authority for the proposition that a claim for excessive damages is a weak litigating position that would support a claim for attorney fees under 35 U.S.C. § 285, and the court's own search has revealed no such authority.  Accordingly, the court can see no merit in Autodesk's argument on damages.  Moreover, attempting to recover more than a case may ultimately be worth is a common litigation tactic, not something that makes a case stand out.  The bottom line is this: EastCoast's claims for damages provide no basis for an award of attorney fees under 35 U.S.C. § 285.

24

### III. Conclusion

For the reasons detailed above, Autodesk's motion for attorney's fees, document no. 197, is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


July 30, 2015

cc:   Thomas Tracy Aquilla, Esq.
      Kenneth C. Bartholomew, Esq.
      Robert F. Callahan, Jr., Esq.
      Joel M. Freed, Esq.
      Kyle L. Harvey, Esq.
      Damian R. Laplaca, Esq.
      Michael S. Lewis, Esq.
      Richard C. Nelson, Esq.
      Alexander P. Ott, Esq.
      Steven R. Pedersen, Esq.
      Donald J. Perreault, Esq.
      Artem N. Sokolov, Esq.
      Rolf O. Stadheim, Esq.
      George C. Summerfield, Esq.